United States District Court
Southern District of Texas
**ENTERED**
February 22, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| CRISTINA REYNA, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 7:20-CV-121 |
| § | |
| IDEA PUBLIC SCHOOLS, § | |
| § | |
| Defendant. § | |

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

Now before the Court is Defendant Idea Public School's Motion to Dismiss Plaintiff's Second Amended Complaint (Dkt. No. 40). After considering the Motion and the applicable law, the Court is of the opinion that Defendant IDEA Public School's Motion (Dkt. No. 40) should be granted.

**I.    Factual and Procedural Background[1]**

Plaintiff Cristina Reyna ("Reyna" or "Plaintiff") was initially employed by Defendant IDEA Public Schools ("IDEA" or "Defendant") in 2016 as a substitute teacher. Dkt. No. 40 at ¶ 3. She was first hired to a contract position for the 2018–2019 school year as a pre-kindergarten teacher. *Id*; Dkt. No. 39 at ¶ 6. On December 11, 2018, Reyna requested a transfer from the El Paso region to the Rio Grande Valley region for the 2019–2020 school year. Dkt. No. 40 at ¶ 3; *see* Dkt. No. 39 at ¶ 26b, 27. Reyna's request was ultimately denied, but she was offered a position at another IDEA campus. *Id.* She did not accept this position and her employment contract with IDEA expired. *Id.* Reyna subsequently filed a claim for unemployment with the

---

[1] As this Order concerns a motion to dismiss under Federal Rule of Civil Procedure 12(b), the facts presented herein are as alleged by Plaintiff to the extent Plaintiff provides the relevant information. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted) (internal quotation marks omitted) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.").

Texas Workforce Commission (TWC) and alleges that she also filed complaints with the Equal Employment Opportunity Commission, the Texas Education Agency, and the Department of Education. Dkt. No. 39 at ¶ 2. Reyna's unemployment claim was denied because the TWC found she quit her job to relocate, not for good cause connected with the work. *Id.*, Ex. 10 at 2 (Determination on Payment of Unemployment Benefits).

Reyna filed this suit on May 8, 2020. Through her Second Amended Complaint, Reyna seeks to hold IDEA liable for wrongful termination, discrimination, harassment, defamation[2], battery, and intentional infliction of emotional distress. Dkt. No. 39 at ¶ 8–16. Reyna also invokes a number of federal statutes and constitutional provisions including the Civil Rights Act of 1964, Title IX, the Equal Pay Act, the Equal Access Act, the Family and Medical Leave Act ("FMLA"), the Equal Protection Clause, and the Due Process Clause. *Id.* Defendant now moves to dismiss Plaintiff's action against it for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim under Rule 12(b)(6). Dkt. No. 40 at 1. IDEA argues the Court does not have subject-matter jurisdiction because of the immunity afforded to IDEA because of its status as an open-enrollment charter school. *Id.* at ¶ 4. In the alternative, if the Court finds it has jurisdiction, IDEA argues Reyna has failed to state a claim because of her unclear and convoluted complaint. Dkt. No. 40 at ¶ 18–80. Plaintiff failed to respond to the Motion and, therefore, the Local Rules of the Southern District of Texas direct

---

[2] Reyna also seeks to hold IDEA liable for "false claims," but the Court takes her "false claims" arguments to be most appropriately subsumed within her defamation claim. Although Plaintiff's Second Amended Complaint states that IDEA's actions "constitute [a] violation of the False Claims Act 32 § 3729-3733," Plaintiff has not plead a False Claims Act (FCA) claim. Dkt. No. 39 at ¶ 31(a); 32 U.S.C. § 3729. If Reyna sought to bring a cause of action against IDEA under the FCA, she would have been required to plead that IDEA defrauded the government and she would have been required to go through the process laid out in §3730 of the FCA. There is no evidence Reyna complied with any of the steps in the statute. 31 U.S.C. § 3730(b). Therefore, to the extent possible, the Court takes Reyna's "false claim" arguments to be relevant instead to her defamation claim. This is analyzed more fully in this Order.

this Court to treat Defendant's Motion to Dismiss as unopposed. *See* Local Rule 7.4 ("Failure to respond to a motion will be taken as a representation of no opposition.").

## II.     Whether the Court has Subject-matter Jurisdiction

### A. Standard of Review

When a district court has pending before it both a 12(b)(1) motion and a 12(b)(6) motion, the generally preferable approach, if the 12(b)(1) motion essentially challenges the existence of a federal cause of action, is for the court to find jurisdiction and then decide the 12(b)(6) motion. *Jones v. State of Ga.*, 725 F.2d 622, 623 (11th Cir. 1984) (citing *Williamson v. Tucker,* 645 F.2d 404, 415 (5th Cir. 1981), *cert. denied,* 454 U.S. 897(1981)).

A court properly dismisses a case for lack of subject-matter jurisdiction under Rule 12(b)(1) "when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)); *see* FED. R. CIV. P. 12(b)(1). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction," who "constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("It is to be presumed that a cause lies outside [federal courts'] limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction[.]") (internal citations omitted). Subject-matter jurisdiction is determined at the time of the filing of the complaint. *Whatley v. Resolution Tr. Corp.*, 32 F.3d 905, 907 (5th Cir. 1994). "A motion to dismiss for lack of jurisdiction may be decided by the district court considering only the complaint, the complaint supplemented by undisputed facts reflected in the record, or the complaint supplemented by undisputed facts plus the court's

resolution of disputed facts." *Meliezer v. Resolution Trust Co.,* 952, F.2d 879, 881 (5th Cir. 1992).

### B. Plaintiff's Claims

The Court does not have jurisdiction over many of Plaintiff's claims because IDEA is protected by sovereign immunity pursuant to the Eleventh Amendment. *Ferguson v. Academy*, No. 3:17-CV-0366-S-BK, 2018 WL 2303801 at *3 (N.D. Tex. Apr. 24, 2018) (citing *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 332 n. 7 (5th Cir. 2002) (finding that sovereign immunity barred claim for injunctive relief where plaintiff only sued a state agency and not any of its officers)). The Eleventh Amendment bars suit by private citizens, like Reyna, against a non-consenting state in federal court. *Hans v. Louisiana*, 134 U.S. 1, 15 (1890). Eleventh Amendment immunity applies not just to the state itself but extends to "any state agency or other political entity that is deemed the 'alter ego' of the State." *Vogt v. Bd. of Comm'rs of Orleans Levee Dist.*, 294 F.3d 684, 688–89 (5th Cir. 2002) (citing *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997)). In Texas, open-enrollment charter schools are entitled to governmental immunity. *El Paso Educ. Initiative, Inc. v. Amex Properties, LLC*, 602 S.W.3d 521, 530 (Tex. 2020). State sovereign immunity can be waived in certain circumstances, including where Congress or the state abrogates the immunity. *See Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 363–64 (2001). To abrogate immunity, the Legislature must do so through clear and unambiguous statutory language. *See Crook v. Galaviz*, 616 Fed.Appx. 747, 752 (5th Cir. 2015); *Morgan v. Plano Indep. Sch. Dist.*, 724 F.3d 579, 583 (5th Cir. 2013); *Tooke v. City of Mexia*, 197 S.W.3d 325, 328–29 (Tex. 2006); TEX. GOV'T CODE § 311.024 (statutes do not waive immunity "unless the waiver is effected by clear and unambiguous language"). Relatedly, sovereign immunity does not bar a plaintiff from suing a state official in his or her

individual capacity to enjoin future conduct. *Quern v. Jordan*, 440 U.S. 332, 337 (1979) (citing *Ex parte Young*, 209 U.S. 123 (1908)). In the case before the Court, Plaintiff has sued only the school district and none of its officers in their individual capacity. Therefore, the question is whether Congress or the state has abrogated sovereign immunity for any of Plaintiff's claims.

Immunity has not been abrogated for Plaintiff's tort claims (harassment, battery, and intentional infliction of emotional distress). In fact, IDEA is entitled to immunity under the Texas Tort Claims Act ("TTCA"). *See Neighborhood Centers Inc. v. Walker*, 544 S.W.3d 744, 752 (Tex. 2018). The Texas Legislature has specified that an open-enrollment charter school, like IDEA, is a "governmental unit" for purposes of the TTCA. TEX. EDUC. CODE § 12.1056(b); *see Neighborhood Centers Inc.*, 544 S.W.3d at 752 (explaining that 2015 amendments to Section 12.1056 "made an open-enrollment charter school . . . a 'governmental unit' under the [TTCA] and subject to the same liability under [the TTCA] as a school district."); TEX. CIV. PRAC. & REM. CODE § 101.001(3) (defining governmental unit). As a result, IDEA is subject to liability under the TTCA "only in the manner that liability is provided by that chapter for a school district." TEX. EDUC. CODE § 12.1056(b). Immunity from tort claims is only waived to the extent liability arises from the negligent use or operations of a motor vehicle. TEX. CIV. PRAC. & REM. CODE § 101.051 (limiting liability of school districts only as to torts related to the use or operation of motor vehicles), 101.057(2) (immunity is not waived for intentional acts); *Pierce v. Hearne Indep. Sch. Dist.*, 600 Fed.Appx. 194, 197 (5th Cir. 2015) (explaining Texas school districts are "immunized from tort liability under the TTCA unless the claim [arises] from the operation or use of a motor-driven vehicle"); *Jones v. Houston Indep. Sch. Dist.*, 979 F.2d 1004, 1006 (5th Cir. 1992). The allegations before the Court show that Reyna's tort claims do not arise from the operation of a motor-vehicle, and therefore governmental immunity for these claims has

not been abrogated and the Court does not have jurisdiction over them. However, although Reyna's harassment, battery, and intentional infliction of emotional distress tort claims are barred, the Fifth Circuit has allowed plaintiffs to maintain defamation suits against schools. *See Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 743 (5th Cir. 2019).

Plaintiff also brings a wrongful termination claim based on breach of contract. This claim is barred by governmental immunity. "While § 271.152 of the Texas Government Code provides a limited waiver of governmental immunity for certain breach of contract claims, § 71.156 explicitly exempts suits in federal court from that waiver." *Smith v. Houston Indep. Sch. Dist.*, 229 F.Supp.3d 571, 576 (S.D. Tex. 2017) (citing Tex. Local Gov't Code § 271.156 ("This subchapter does not waive sovereign immunity to suit in federal court."); *Nationwide Public Ins. Adjusters v. Edcouch-Elsa I.S.D.*, 913 F.Supp.2d 305, 311 (S.D. Tex. 2012) (dismissing breach of contract claim against a Texas school district because "§ 271.152 does not waive EEISD's governmental immunity to suit in federal court").

Similarly, some of Reyna's federal claims are barred by sovereign immunity. Congress has not abrogated sovereign immunity for Reyna's Fair Labor Standards Act claim for unpaid wages or her Family Medical Leave Act (FMLA) self-care claim. *Henley v. Simpson*, 527 Fed.Appx. 303, 307 (5th Cir. 2013) ("The Court has not held . . . that Congress validly abrogated State sovereign immunity under the FLSA."); *Parker v. Prairie View A&M Univ.*, 145 F.Supp.3d 702, 705 (S.D. Tex. 2015) (citing *Alden v. Main*, 527 U.S. 706, 712 (1999) ("The FLSA does not abrogate state sovereign immunity.")); *Sullivan v. Tex. A&M Univ. Sys.*, No. 20-2048, 2021 WL 347247, *4 (5th Cir. Feb. 2, 2021) (holding the state's sovereign immunity has not been waived for self-care FMLA claims). On the other hand, Congress *has* abrogated state sovereign immunity for a number of Reyna's federal claims. Sovereign immunity is not a bar to Reyna's

constitutional claims under § 1983 or under the Civil Rights Act of 1964. *Monell v. Dept. of Social Services*, 436 U.S. 658, 691 (1978) (finding sovereign immunity does not bar § 1983 claims against local governments where the constitutional deprivation arises from a governmental custom); *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976) (rejecting state sovereign immunity defense to Title VII claim); *Perez*, 307 F.3d at 326 n. 1 (finding the Fifth Circuit has "long recognized that Congress has clearly abrogated the states' Eleventh Amendment immunity in enacting Title VII"); 42 U.S.C. § 2000d–7 ("A state shall not be immune under the Eleventh Amendment . . . from suit in Federal court for a violation of . . . Title VI of the Civil Rights Act of 1964"). Similarly, Plaintiff's claims under Title IX, the Equal Pay Act, the Equal Access Act and the FMLA's family-care provisions are not barred by sovereign immunity. 42 U.S.C. § 2000d–7 ("A state shall not be immune under the Eleventh Amendment . . . from suit in Federal court for a violation of . . . Title IX of the Education Amendments of 1972."); *Raj v. La. State Univ.*, 714 F.3d 322, 330 n. 4 (5th Cir. 2013) ("Congress has expressly abrogated sovereign immunity under the Equal Pay Act."); *Board of Educ. of Westside Comm. Schs. v. Mergens By and Through Mergens*, 496 U.S. 226, 235 (1990) (allowing a suit against a school district under the Equal Access Act); *Nev. Dep't of Hum. Res. v. Hibbs*, 538 U.S. 721, 724–25 (2003) (holding Congress acted constitutionally in abrogating the states' immunity with regard to FMLA claims under the family-care provision).

Therefore, the following claims survive Defendant's 12(b)(1) Motion to Dismiss: defamation, § 1983, the Civil Rights Act of 1964, Title IX, the Equal Pay Act, the Equal Access Act, and the FMLA's family-care provisions.

### III. Whether Plaintiff States a Claim

#### A. Standard of Review

A party may move to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) is read in conjunction with the pleading standard set forth in Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2); *see Ashcroft v. Iqbal*, 556 U.S. 662, 677–68 (2009). This standard does not require detailed factual allegations. *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). However, a party's "obligation to provide the 'grounds' of his 'entitle[ment]' to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). To survive a Rule 12(b)(6) motion, the complaint and any other matters properly considered[3] must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility when the pleaded factual content allows the court, drawing upon its "judicial experience and common sense," to reasonably infer that the defendant is liable for the misconduct alleged. *Id.* at 678 (citing *Twombly*, 550 U.S. at 556), 679.

Courts hold pro se plaintiffs to a more lenient standard than lawyers when analyzing complaints, but pro se plaintiffs must still plead factual allegations that raise the right to relief above a speculative level. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016) (citing *Twombly*, 550 U.S. at 555). Under this lenient pleading standard, courts are not required to "conjure up unplead allegations or guess at what causes of action a pro se litigant is trying

---

[3] "Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)); *see also Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (court's review on 12(b)(6) motion "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint").

assert in an attempt to save the pleading." *Moore v. J.P. Morgan Chase*, No. 1:10-CV-143, 2010 WL 11628789, at *7 (E.D. Tex. Dec. 2, 2010).

### B. Defamation

To establish an actionable claim of defamation under Texas law, plaintiff must show: "(1) publication of a false statement of fact to a third party, (2) the statement must concern the plaintiff and be defamatory, (3) the publication must be made with the requisite degree of fault, and (4) the publication must cause damages." *Walker*, 938 F.3d at 743 (citing *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015)). "A statement is defamatory if it tends to injure a person's reputation and thereby expose the person to public hatred, contempt, ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation." *Id.* (citing *Lipsky*, 460 S.W.3d at 593).

Plaintiff claims IDEA made false claims to a number of agencies and posted photos of her teaching at IDEA after she was terminated. Dkt. No. 39 at ¶ 14, ¶ 31(b). In her Second Amended Complaint, Reyna states Defendant made "false claims to Texas Workforce Commission amongst to other agencies and individuals." *Id.* at ¶ 14. And that "Defendant made false statements, promotes Reyna teaching at IDEA, made false employment promises and pay and claims to CPS, TWC, IRS, credit reporting agencies and TEA." *Id.* at ¶ 31(b). Reyna does not allege *what* IDEA said to the listed agencies. As a result, the Court cannot analyze whether Reyna has sufficiently plead that the statements were false or that they were defamatory. To the extent Reyna claims the statements were false and defamatory, those claims are conclusory. Similarly, Reyna's claim that IDEA defamed her when it published photos of Reyna teaching after she left IDEA's employ is also flawed. Reyna does not plead how the publication of the photos was defamatory—i.e., how it tended to injury her reputation—or how the publication

9 / 16

caused her damages. As a result, none of Reyna's factual allegations allow the Court to conclude Reyna has plead a defamation claim that raises above a speculative level. *See Chhim*, 836 F.3d at 470.

### C. Discrimination under § 1983

Section 1983 "provides that every person who, under color of any statute, ordinance, regulation, custom, or usage of any State subjects, or causes to be subjected, any person to the deprivation of any federally protected rights, privileges, or immunities shall be civilly liable to the injured party." *Monell*, 436 U.S. at 658 (quoting 42 U.S.C. § 1983) (internal quotations omitted). The Supreme Court has held that local governmental units, such as school districts, are considered persons to which § 1983 applies. *Id.* at 689. The scope of a local government's liability under § 1983 is limited to instances where the deprivation of rights results from a custom, policy, or practice. *Id*.

> Under *Monell v. Department of Social Services of City of New York* and its progeny, a claim of "municipal liability under Section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom. The "official policy" requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible . . . So to prevail against a public school district, a plaintiff must show that the district's final policymaker acted with deliberate indifference in maintaining an unconstitutional policy that caused the plaintiff's injury.

*Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 365–66 (5th Cir. 2020).

Reyna's § 1983 claims seem to suggest that (1) her equal protection rights were violated because IDEA rejected her request to transfer locations based on either her criminal record or her geographical preference and (2) her due process rights were violated because IDEA failed to give notice of her termination. *See* Dkt. No. 39 at ¶ ¶ 23, 28. First, the Court looks to whether Reyna alleges an official policy relevant to these claims.

On the issue of her equal protection claim, Reyna does not argue or provide evidence to show that IDEA had an official policy regarding transfer requests or employees with criminal records. Without any allegation of a policy on this issue, Reyna's § 1983 equal protection claim fails. Next moving to the issue of IDEA's failure to provide notice of nonrenewal of Reyna's contract, Reyna points to pages 17 and 18 of the employee handbook. Reyna only provides the Court with page 17 of the handbook, which explains that IDEA implements two types of employment relationships: contract and at-will employment. Dkt. No. 39, Ex. 9 at 7. The handbook explains that "[c]ontract employees are employed under a contract for a set period of time . . . [and] are not granted any rights, benefits, privileges, protections, or procedures or contract terms required by Texas Education Code Chapter 21." *Id.* Provisions in Chapter 21 require notice of nonrenewal of a term contract be given to a teacher not later than 10 days before the end of the school year. *See* TEX. EDUC. CODE § 21.206. It appears by its language that Chapter 21 does not apply to charter schools.[4] IDEA's handbook in essence specifically provides that contract employees like Reyna are not entitled to notice of the school's decision not to renew their contract. This policy of not providing notice of nonrenewal of a term contract is precisely what Reyna claims violated her due process rights—it is the "driving force" of her due process claim. Reyna must also plead this denial of notice was unconstitutional. *Doe*, 964 F.3d at 366.

Jurisprudence does not support a finding that Reyna had a property interest in the renewal of her one-year contract. The Texas Supreme Court, in *Grounds v. Tolar Indep. Sch. Dist.*, 856 S.W.2d 417, 418 (Tex. 1993), addressed a similar issue. In *Grounds*, a public school teacher claimed the school's failure to provide him with notice of nonrenewal of his teaching contract

---

[4] This subchapter defines school district to mean "any public school district in the state." TEX. EDUC. CODE § 21.201(2). While other places in the Education Code specifically reference charter schools, the sections on employment contracts do not. This has further been acknowledged in Texas state court. *See e.g.*, *Azleway Charter Sch. v. Hogue*, 515 S.W.3d 359, 363 n. 5 (Tex. App.—Tyler 2016, no pet. h.) (noting the definitions in Section 21, Subchapter E, make no reference to open-enrollment charter schools).

constituted a deprivation of due process. *Id.* The Court found the teacher did in fact have a property interest in renewal of his contract because the school's discretion in not renewing the teacher's contract was limited by preestablished reasons for nonrenewal found in Chapter 21 of the Texas Education Code. *Id.* "The United States Supreme Court defined a constitutionally protected property interest in *Logan v. Zimmerman Brush Co.* as 'an individual entitlement grounded in state law which cannot be removed except for cause.'" *Id.* (internal quotations and citations omitted). The *Tolar* Court found that "the [Chapter 21] preestablished reasons for nonrenewal constitute[d] a substantive limit on the State's discretion creating a property interest." *Id. Tolar* is distinguishable from the case before this Court because, as discussed, charter schools are not subject to the limitations found in Chapter 21. *See* TEX. EDUC. CODE § 21.201(2); *Azleway Charter Sch.*, 515 S.W.3d at 363 n. 5. Reyna does not identify any other limits on the charter school's discretion that leads this Court to conclude she had a property interest in the renewal of her one-year contract. Therefore, she does not successfully plead a claim under § 1983.

### D. Civil Rights Act of 1964

Plaintiff claims that her "civil rights" have been "infringed" by Defendant's actions. Dkt. No. 39 at ¶ 26. Plaintiff cites Title VI and Title VII of the Civil Rights Act of 1964. Dkt. No. 39 at ¶ 8. Both titles prohibit discrimination against an individual because of the individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000d (Title VI); 42 U.S.C. § 2000e–2(a)(1) (Title VII). Title VI applies to any program or activity receiving Federal financial assistance and Title VII applies to employment discrimination. *Id.*

With respect to this claim, Reyna alleges that Defendant prohibited "Reyna from using the employer[-]provided trainings, education and events, and employment in light of

discrimination that Reyna was a 'felony criminal.'" Dkt. No. 39 at ⁋ 28(b). Plaintiff does not allege she was discriminated against or harassed based on her race, color, religion, sex, or national origin. For this reason alone, Plaintiff fails to plead a claim under Title VI or Title VII of the Civil Rights Act of 1964. *See Raj v. Louisiana State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013) (holding plaintiff did not plead a claim of hostile work environment above a speculative level where he did not allege any facts that link the harassment to his race or national origin).

### E. Title IX

Reyna's Title IX claims fail for a similar reason. The Supreme Court has recognized that,

> Congress enacted Title IX . . . with two principle objectives in mind: "[T]o avoid the use of federal resources to support discriminatory practice" and "to provide individual citizens effective protection against those practices." The statute was modeled after Title VI of the Civil Rights Act of 1964, which is parallel to Title IX except that it prohibits race discrimination, not sex discrimination, and applies in all programs receiving federal funds, not only in education programs.

*Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286 (1998) (internal citations omitted).

With respect to this claim, Reyna argues that "Defendant questioned Reyna['s] abilities and credentials while employed, misguided and refused to follow process even after being reported, refused to complete duties stating it was not guaranteed, sent Reyna various false survey questions, [sent] maliciously bothersome emails and redirected employment behavior in front of colleagues and parents of students." Dkt. No. 39 at ⁋ 33(b). Reyna does not allege that any of these actions were taken because of her race. As a result, Reyna fails to state a claim under Title IX.

### F. Equal Access Act

The Equal Access Act prohibits public secondary schools from denying equal access or discriminating against "any students who wish to conduct a meeting within [the school's] limited open forum on the basis of the religious, political, philosophical, or other content of the speech at

such meetings." Equal Access Act, 20 U.S.C. § 4041(a). There is no question that Plaintiff is not a student. Further, she does not allege any discrimination related to her religious, political, or philosophical views. Therefore, Plaintiff fails to bring a claim under the Equal Access Act.

### G. Equal Pay Act

Reyna bears the initial burden of making out a prima facie case of discrimination under the Equal Pay Act by "showing that an employer compensates employees differently for equal work." *King v. Univ. Healthcare Sys. L.C.*, 645 F.3d 713, 723 (5th Cir. 2011) (citing *Siler-Khodr v. Univ. of Tex. Health Sci. Ctr. San Antonio*, 261 F.3d 542, 546 (5th Cir. 2001)). The elements of a prima facie Equal Pay Act case are: (1) the employer is subject to the Act, (2) the employee performed work in a position requiring equal skill, effort, and responsibility under similar working conditions, and (3) the employee was paid less than the employee of the opposite sex providing the basis of comparison. *Chance v. Rice Univ.*, 984 F.2d 151, 153 (5th Cir. 1993).

Reyna claims IDEA violated this Act "by refusing plaintiff compensation for relocation, and vacation time and pay having the same job description and duties as 'fellow' teachers." Dkt. No. 39 at ¶ 26(e), 29(b). Reyna does not provide any details about her "fellow teachers" and therefore makes no claim that she was paid less than her male colleagues. Her complaint argues IDEA's actions were the result of her criminal status and desire to relocate, not her gender. For these reasons, Reyna does not state a claim under the Equal Pay Act.

### H. Family and Medical Leave Act

The Family and Medical Leave Act (FMLA) "allows eligible employees to take up to twelve weeks of leave in any one-year period to address a family member's or the employee's own serious health condition." *Bryant v. Tex. Dept. of Aging and Disability Servs.*, 781 F.3d 764, 768 (5th Cir. 2015). Section 2615(a)(1) of the FMLA provides that "[i]t shall be unlawful for an

employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." To succeed on an FMLA interference claim, plaintiff "must at least show that [the defendant] interfered with, restrained, or denied her exercise or attempt to exercise FMLA rights, and that the violation prejudiced her." *Cuellar v. Keppel Amfels, L.L.C.*, 731 F.3d 342, 347 (5th Cir. 2013).

> Reyna claims that IDEA
>
> refused and denied Reyna to utilize FMLA with medical illness of self and minor child . . . . Defendant's unlawful actions have caused Reyna damage in an amount presently unknown, but in an amount to be determined . . . Reyna has been harmed and will continue to be irreparably harmed as a result of Defendant['s] negligent and unlawful acts unless Defendant is permanently enjoyed from their unlawful conduct.

Dkt. No. 39 at ¶ 30(b). This is the extent of Reyna's allegations and evidence of a FMLA family-care violation.[5] Reyna does not advise the Court of any details supporting her accusation that IDEA denied her FMLA leave nor does she explain how she was prejudiced by IDEA's alleged denial of FMLA leave. Reyna's FMLA allegations—especially those regarding whether she was prejudiced—appear to be a formulaic recitation of the elements of a FMLA claim. *See Twombly*, 550 U.S. at 555. For these reasons, the Court cannot find that Reyna has plead factual allegations that raise her right to relief under the FMLA above a speculative level. *See Chimm*, 836 F.3d at 470.

### I. Other Claims

Reyna mentions many federal and state statutes throughout her complaint. To the extent the Court has not addressed these statutes in this Order, Plaintiff has not provided the Court with sufficient detail to state a claim upon which relief may be granted under the statutes.

### IV. Conclusion

For the foregoing reasons, the Court hereby **ORDERS** that:

---

[5] As previously discussed, the Court has jurisdiction only over Reyna's claims with regard to the care of her child.

15 / 16

Defendant IDEA Public School's Motion to Dismiss (Dkt. No. 40) is **GRANTED**;

Plaintiff's harassment, battery, intentional infliction of emotional distress, wrongful termination, and FMLA self-care are **DISMISSED** without prejudice for lack of subject-matter jurisdiction; and

Plaintiff's defamation, § 1983, Civil Rights Act of 1964, Title IX, Equal Pay Act, Equal Access Act, and FMLA family-care claims are **DISMISSED** with prejudice for failure to state a plausible claim for relief.

All other pending motions—Plaintiff's Motion for Sanctions (Dkt. No. 70)—are **MOOTED**.

SO ORDERED this 22nd day of February, 2021, at McAllen, Texas.

*Randy Crane*
Randy Crane
United States District Judge